## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Case No. 1:21-cv-2295

ALFONSO RIOS, *On Behalf of Himself and All Others Similarly Situated,*

                Plaintiff,

v.

CORECIVIC OF TENNESSEE, LLC,

                Defendant.

Case No. 1:21-cv-2632

WANDA ROSARIO RIVERA, *On Behalf of Herself and All Others Similarly Situated,*

                Plaintiff,

v.

CORECIVIC OF TENNESSEE, LLC,

                Defendant.

### UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

Plaintiff Alfonso Rios ("Plaintiff Rios") and Plaintiff Wanda Rosario Rivera ("Plaintiff Rivera"), by and through their respective counsel, respectfully submit this unopposed motion requesting preliminary approval of their class settlement. In support of this motion, Plaintiffs submit the following documents and proposed orders: **Exhibit 1:** Settlement and Release Agreement; **Exhibit 1-A**: Proposed Order Preliminarily Approving Class Action Settlement; **Exhibit 1-B**: Proposed Order Granting Final Approval of Class Action Settlement; **Exhibit 1-C**:

Notice of Proposed Class Action Settlement and Fairness Hearing; **Exhibit 1-D**: List of Class

Members; and **Exhibit 2**: Declaration of Class Counsel Hans Nilges.

## I.    INTRODUCTION

On August 25, 2021, Plaintiff Rios commenced *Rivera v. CoreCivic of Tennessee, LLC*,

District of Colorado Case No. 1:21-cv-2295 ("*Rios* case") against Defendant CoreCivic of

Tennessee, LLC ("CoreCivic" or "Defendant") as a class action on behalf of a group of

correctional officers and detention officers in Colorado for allegedly failing to pay them for all

hours worked, including the time spent undergoing required security screenings prior to the start

of their shifts. On September 28, 2021, Plaintiff Rivera filed *Rivera v. CoreCivic of Tennessee,*

*LLC*, District of Colorado Case No. 1:21-cv-02632 ("*Rivera* case") against Defendant on behalf

of the same group of correctional officers and detention officers.  As explained in the Unopposed

Motion to Consolidate for Settlement (*Rios* Case, Doc. No. 39), the *Rios* case and the *Rivera* case

(together referred to as "the Civil Actions") involve substantially similar alleged wage and hour

violations, and thus, Plaintiff Rios and Plaintiff Rivera ("Named Plaintiffs") and their respective

counsel agreed to jointly prosecute the Civil Actions against Defendant. Following extensive

investigation, informal discovery, and mediation with a highly experienced neutral, Carole Katz,

Esq., the parties agreed, subject to court approval, to settle the Civil Actions on a class-wide basis

under Rule 23 of the Federal Rules of Civil Procedure.

As explained in more detail below, the terms of the settlement are fair, reasonable, and

adequate, were reached during arms-length negotiations conducted by experienced counsel with

the assistance of an experienced mediator, and on the basis of mutual recognition of the strengths

and weaknesses of each side's positions. The specific settlement terms agreed to by the Parties are

set forth in their proposed Settlement Agreement (Ex. 1). The parties have agreed to a form of

notice and process for notifying Class Members of the settlement that complies with the relevant

criteria. To effectuate their settlement, the Parties jointly request entry of an Order in the form

proposed in Exhibit 1-A providing the following relief:

     (1)     granting preliminary certification of the Rule 23 Class for settlement purposes;

     (2)     granting preliminary approval of the Settlement Agreement;

     (3)     approving the proposed class notice and claim form (Ex. 1-C);

     (4)     appointing as Class Counsel for the Settlement Class, Don Foty, Hans Nilges, Anthony Lazzaro, and Carolyn Cottrell;

     (5)     appointing Plaintiff Rios and Plaintiff Rivera as Class Representatives;

     (6)     preliminarily approving Class Counsel's attorney's fees and expenses;

     (7)     preliminarily approving the service payments to the Class Representatives; and

     (8)     scheduling a fairness hearing for final approval of the settlement.

## II.     BACKGROUND

### A.     <u>The Civil Actions</u>

The operative Complaints in the Civil Actions assert claims under Colorado law and the

Fair Labor Standards Act ("FLSA") for failing to compensate non-exempt correctional officers

and detention officers in Colorado for all hours worked. The central allegation is that Defendant

required the Named Plaintiffs and the Class Members to undergo mandatory screenings (security

and covid-19), without pay, before clocking-in at the start of their shift, and because the Named

Plaintiffs and Class Members regularly worked more than 40 hours per week, they are entitled to

overtime compensation for the time spent undergoing such screenings. Defendant denies the

allegations in the Civil Actions and argues, *inter alia*, that it properly compensated Named

Plaintiffs and the Class Members for all hours worked, the alleged unpaid work was not compensable under Federal or Colorado law, and that Plaintiffs and the Class Members are not entitled to any relief.

### B.      Settlement Negotiations

Prior to settlement negotiations, the Parties engaged in extensive legal discussion, which included several communications between counsel for the Parties.  The parties also engaged in a comprehensive exchange of information regarding Plaintiffs' claims and Defendant's defenses. Defendant provided Plaintiffs' Counsel data and information necessary to create a damages model, including time and pay records for a representative sampling of the Class Members.  Using these records, Plaintiffs' Counsel prepared a complete analysis of the Named Plaintiffs' and the Class Members' damages.  (Ex. 2 – Nilges Dec. at ¶9).

From August 2022 to October 2022, the Parties attended multiple pre-mediation conferences and had several lengthy discussions concerning settlement, the Parties' legal and factual positions, and the Named Plaintiffs' and Class Members' alleged damages.  *Id*. at ¶10.

On October 6, 2022, the Parties participated in a day-long mediation with Carole Katz, Esq., a reputable mediator with extensive experience in wage-hour class actions, where they successfully reached an agreement to settle the Civil Actions on a class-wide basis under Rule 23. *Id*. at ¶11.

### C.      The Settlement Terms

The Parties' proposed settlement terms are fully set forth in their Settlement Agreement (Ex. 1). This Agreement reflects a compromise of *bona fide* disputed claims. The Agreement defines the Class Members as those individuals who, at any time during the period between March

16, 2020 (*i.e.*, the effective date of COMPS Order #36) and September 16, 2022, and were employed by CoreCivic as a Correctional Officer, Senior Correctional Officer, Detention Officer, or Senior Detention Officer in the State of Colorado. (*Id*. at ¶ 1.5.) The Parties have agreed upon a list of all Class Members who are identified (by employee identification number) in Exhibit 1-D.

The settlement provides for a maximum settlement amount of $92,500, exclusive of employer share of payroll taxes ("gross settlement amount"). (Ex. 1 at ¶ 1.18.) All payments required under the settlement will be made from this amount, including: (1) payments to Settlement Class Members (i.e., those Class Members who do not request exclusion from the Settlement); (2) Class Counsel's attorney's fees and litigation costs; (3) the Settlement Administrator's expenses of administering the settlement; and (4) Enhancement Payments to the Named Plaintiffs. (*Id*.)

The individual payments for which Class Members are eligible ("individual settlement allocation") will be calculated proportionally based on the time and pay records informally produced by Defendant. (*Id*. at ¶ 3.1.) One-third or $30,833.33 of the gross settlement amount will be paid to Class Counsel as attorney's fees and a maximum of $10,000 as expenses. (*Id*. at ¶ 1.18(b).) Class Counsel will also request that $5,000 of the gross settlement amount be paid to Plaintiff Rios and Plaintiff Rivera ($2,500 each) for enhancement payments. (*Id*. at ¶ 1.18(d).)

The settlement will be administered by Analytics Consulting LLC. (*Id*. at ¶ 1.11.) Within fourteen (14) days after the date of the Preliminary Approval Order, Defendant will provide the Settlement Administrator with a spreadsheet listing the names and last known addresses of the Class Members. (*Id*. at ¶ 4.2(a).) Thereafter, the Settlement Administrator will send, via U.S. First Class Mail, the Notice of Proposed Settlement of Class Action Lawsuit and Fairness Hearing

("Notice") (Ex. 1-C) to all Class Members. (*Id*. at ¶ 4.2(b).) Any Class Member who does not wish

to become a Settlement Class Member may request exclusion from the class by submitting a signed

request for exclusion to the Settlement Administrator within forty-five (45) days following the

date of the initial mailing of the Notice (the "Opt-Out Period"). (*Id*. at ¶ 4.2(c).) Settlement Class

Members may present objections to the proposed settlement at the Fairness Hearing, with or

without counsel hired by the objector, provided that they follow the procedure set forth in the

Notice, *i.e*., by first submitting their objections in writing to the notice administrator during the

Opt-Out Period. (*Id*. at ¶ 4.2(d); Ex. 1-C.). The settlement is final on the "effective date" which

occurs after the time period for filing an appeal of the final approval order has expired or, if an

appeal is filed, the settlement has been finally approved or the appeal has been withdrawn. (Ex. 1

at ¶ 1.14.)

Once the settlement is final, Defendant will send the final settlement amount to the

settlement administrator, who will then mail each Settlement Class Member payment of their

individual settlement allocation. (*Id*. at ¶¶ 5.1-5.3.) Each individual settlement payment will be

allocated 36% to wages and 64% to non-wages. (*Id*. at ¶ 5.3(a).)[1] Any Class Member who excludes

themself from the Class by submitting a request for exclusion during the Opt-Out Period will not

be entitled to payment of their individual settlement allocation (which sums shall remain the

property of Defendant) and shall not be subject to any release of claims. (*Id*. at ¶ 5.3.) However,

all Settlement Class Members will release all federal and state law claims that were or could have

been asserted in the Civil Actions based on the facts alleged therein, with the exception of claims

---

[1] After one hundred eighty (180) days of mailing, the Settlement Administrator will stop payment
on any checks that have not been negotiated.  Funds associated with checks that are not negotiated
by the expiration date will revert to Defendant. (Ex. 1 at ¶ 5.7.)

for liquidated damages under the FLSA. (*See Id*. at ¶¶ 1.16, 6.1, 6.4)

## III.    CERTIFICATION OF SETTLEMENT CLASS IS APPROPRIATE

In *Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997), the Supreme Court confirmed the legitimacy of settlement classes, noting that "the 'settlement only' class has become a stock device," and that "all Federal Circuits recognize [its] utility..." *Id*. at 618. "The Supreme Court held that a district court faced with a settlement only class need not inquire whether the class would present intractable problems with trial management, but that the other requirements for Rule 23 class certification must still be satisfied." *Pliego v. Los Arcos Mexican Restaurants, Inc*., 313 F.R.D. 117, 125 (D. Colo. 2016) (citing *Amchem Products, Inc*., 521 U.S. at 620). For settlement purposes, the parties agree that the proposed Class meets these requirements.

### A.    All four criteria of Rule 23(a) are satisfied.

Rule 23(a) establishes four prerequisites to class actions: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. Fed. R. Civ. P. 23(a). The parties agree that, for settlement purposes, all four of these requirements have been met.

**Numerosity:** The numerosity requirement is easily satisfied as there are 292 Class Members. *See, e.g., Torres–Vallejo v. Creativexteriors, Inc*., 220 F.Supp.3d 1074, 1081 (D. Colo. 2016) ("Plaintiff's allegation of approximately 140 class members satisfies the numerosity requirement").[2]

**Commonality:** "A finding of commonality requires only a single question of law or fact common to the entire class." *DG v. Devaughn*, 594 F.3d 1188, 1194-1195 (10th Cir.2010).

---

[2] *Pliego*, 313 F.R.D. at 126 ("Through payroll records of the Defendants, the parties have identified 177 putative members of the defined Class. The court finds that this satisfies the numerosity requirement"); *Felps v. Mewbourne Oil Company, Inc*., 336 F.R.D. 664, 688 (D.N.M. 2020) (numerosity satisfied where there were at least 60 potential class members).

"Commonality still exists if class members differ factually but challenge the application of a commonly-applied policy." *Pliego,* 313 F.R.D. at 126. Here, Named Plaintiffs allege that Defendant subjected them and the Class Members to the same practices and policies, including allegedly not paying them for the time they spent undergoing required screenings prior to the start of their shift.  This satisfies the commonality requirement for settlement purposes.

**Typicality:** "A plaintiff's claim is typical of class claims if it challenges the same conduct that would be challenged by the class." *Bass v. PJCOMN Acquisition Corp.,* No. 09-cv-01614, 2011 WL 2149602, at *3 (D.Colo. June 1, 2011). "[D]iffering fact situations of class members do not defeat typicality under Rule 23(a)(3) so long as the claims of the class representative and class members are based on the same legal or remedial theory." *Adamson v. Bowen*, 855 F.2d 668, 676 (10th Cir.1988). Here, Named Plaintiffs and the Class Members were all employed by Defendant as Correctional Officers and/or Detention Officers in Colorado, and the alleged injuries are based upon Defendant's alleged policies and practices that universally applied to all the Class Members, *i.e*., failing to pay its Colorado Correctional Officers and Detention Officers for all hours worked, including time spent undergoing required screenings. The legal standards and requirements for proving the claims asserted in the Civil Actions are the same for Named Plaintiffs and Class Members. This satisfies the typicality requirement for settlement purposes.

**Adequacy:** The adequacy requirement demands that the class representatives "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Rutter & Wilbanks Corp. v. Shell Oil Co*., 314 F.3d 1180,

1187–1188 (10th Cir. 2002). "Absent evidence to the contrary, a presumption of adequate representation is invoked." *Schwartz v. Celestial Seasonings*, 178 F.R.D. 545, 552 (D.Colo. 1998). Here, no conflicts of interest exist, and the settlement provides relief for all Class Members on a pro rata basis. Moreover, as the Declaration of Class Counsel demonstrates, it is clear that Plaintiffs, through experienced counsel, have prosecuted this action vigorously on behalf of the Class Members. With that, all four of the Rule 23(a) requirements are met.

**B.**   **The requirements of Rule 23(b)(3) are satisfied.**

Plaintiffs seek class certification under Rule 23(b)(3), which is appropriate where common questions of fact or law predominate over individual questions and a class action is the superior method for adjudicating the case. Fed. R. Civ. P. 23(b). Here, the alleged wage and hour issues certainly predominate over any individual questions, and class-wide resolution of this controversy is far superior to the alternative of litigating 292 individual suits. *See General Tel. Co. v. Falcon*, 457 U.S. 147, 159 (1982) (class certification advances "the efficiency and economy of litigation which is a principal purpose of the procedure"). "Courts in this District have repeatedly recognized that a class action is superior where the small claims of parties with limited resources are otherwise unlikely to be pursued." *Pliego*, 313 F.R.D. at 127 (citing *Belote v. Rivet Software, Inc*., No. 12-cv-02792, 2013 WL 2317243, *2 (D. Colo. May 28, 2013); *Maez v. Springs Auto. Group, LLC*, 268 F.R.D. 391, 397 (D. Colo. 2010). Here, the Class Members have shown no interest in controlling the litigation of separate actions. Moreover, the claims involved in the Civil Actions are particularly small, and the crux of the Civil Actions arise from an alleged unlawful practice that was in place for only a limited period of time (until April 20, 2020). Also, disputes remained as to whether the 2- or 3-year statute of limitations was applicable, which may ultimately bar

claims of some class members, depending on how long litigation continued and whether mediation was successful. (Ex. 2 – Nilges Dec. at ¶12). Accordingly, certification for settlement purposes is certainly warranted under Rule 23(b)(3).

## IV.    THE SETTLEMENT SHOULD BE PRELIMINARILY APPROVED

The proposed settlement covers claims asserted through a class action, and therefore the terms are subject to approval by the Court pursuant to Rule 23(e)(2), which requires that a class action settlement be "fair, reasonable and adequate." *Rhodes v. Olson Assocs., P.C.*, 308 F.R.D. 664, 666-67 (D.Colo.2015). "Compromises of disputed claims are favored by the courts." *Williams v. First Nat'l Bank*, 216 U.S. 582, 595 (1910). "In the class action context in particular, 'there is an overriding public interest in favor of settlement,' because settlement of complex disputes" minimizes the litigation expenses of both parties and also reduces the strain such litigation imposes upon already scarce judicial resources. *Armstrong v. Board of School Directors*, 616 F.2d 305, 313 (7th Cir. 1980) (citation omitted). "In exercising its discretion, the trial court must approve a settlement if it is fair, reasonable and adequate." *Jones v. Nuclear Pharm., Inc.*, 741 F.2d 322, 324 (10th Cir. 1984).  In the Tenth Circuit, the following factors are analyzed in determining whether this standard is met:

> (1) whether the proposed settlement was fairly and honestly negotiated; (2) the judgment of the parties that the settlement is fair and reasonable; (3) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt; and (4) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation.

*Rhodes v. Olson Assocs., P.C.*, 308 F.R.D. 664, 666-67 (D.Colo.2015) (citing *Rutter*, 314 F.3d at1188). "Although the Court will consider these factors in depth at the final approval hearing, they also provide a useful guide at the preliminary approval stage." *Pliego*, 313 F.R.D. at 128.  As

discussed below, the proposed settlement meets the standards for approval.

**A.    The four factors favor approval.**

**1.    The settlement was fairly and honestly negotiated.**

"There are numerous indicia that the settlement negotiations in this case have been fair, honest and at arm's length." *Lucas v. Kmart Corp*., 234 F.R.D. 688, 693 (D.Colo. 2006). "[T]he parties to this litigation have 'vigorously advocated their respective positions throughout the pendency of the case.'" *Lucas*, 234 F.R.D. at 693. The Parties conferred at length regarding the factual and legal issues in the Civil Action, exchanged informal discovery, analyzed relevant data, facts, and law, and attended a full mediation session during which they possessed all the necessary information to thoroughly consider their positions and the benefits of settlement. The Parties were represented by "counsel with expertise on the [wage and hour laws] and complex class action litigation." *Id*. Counsel for both Parties are experienced litigators who practice wage and hour cases on a daily basis and who have been involved in millions of dollars' worth of settlements of such actions during their careers. Moreover, the Parties utilized a well-known third-party mediator, who is familiar with negating wage and hour cases, to assist them in reaching the Settlement. (*See e.g.*, Ex. 2 – Nilges Dec. at ¶¶2-7, 9-11). These factors all support the integrity of the Parties' settlement negotiations.

**2.    The judgment of the Parties favors approval.**

The Parties and their counsel agree that the settlement is fair and reasonable. "Counsels' judgment as to the fairness of the agreement is entitled to considerable weight." *Id.* at 695. "Here, the parties' counsel — among whom are attorneys with substantial experience in complex class action litigation and [employment] class actions — unanimously support this settlement." *Id.* As

such, this factor supports granting preliminary approval.

### 3. Serious questions of law and fact exist.

Although it is not the role of the Court at this stage of the litigation to evaluate the merits, *Wilkerson v. Martin Marietta Corp.,* 171 F.R.D. 273, 284 (D.Colo. 1997), it is clear that the Parties can reasonably conclude that there are serious questions of law and fact that exist that could significantly impact this case if it were further litigated. First, the Parties dispute whether the Civil Actions can be maintained as a class action or collective action. Thus, without this settlement, the Class Members may not get notice and may not be entitled to compensation. Second, there has been a serious disagreement amongst the Parties concerning the duration of the alleged unpaid work, whether the time the Class Member spent undergoing screenings was compensable, and if so, whether that time was de minimis, and whether the Class Member are entitled to any relief whatsoever. After discovery, Defendant could have prevailed on summary judgment with respect to some or all of Plaintiff's claims. (Ex. 2 – Nilges Dec. at ¶12). "It is thus clear that there were numerous factual and legal questions yet to be addressed in this litigation that could have had a serious impact on the results for either side." *Lucas*, 234 F.R.D. at 694. Accordingly, this factor also supports granting preliminary approval.

### 4. The value of immediate recovery outweighs the mere possibility of future relief after protected and expensive litigation.

The claims involved in this case are small, and to litigating them, with no guarantee of success, would be extremely costly. "If [the Civil Actions] were to be litigated, in all probability it would be many years before [they are] resolved." *Lucas*, 234 F.R.D. at 694. Many years and significant costs would be required for the Parties to litigate the claims, to complete the discovery, participate in pretrial proceedings, and brief motions for class certification and summary judgment.

The summary judgment and/or class certification decision could be appealed to the Tenth Circuit (and possibly beyond), which could take many years to complete. Moreover, assuming the Parties went to trial, a trial would require testimony from company representatives, employees, and expert witnesses, and the resolution of these issues by a jury constitutes substantial risk to Class Members. Further, assuming such a trial went to verdict, there is a possibility that the verdict could be reversed. "By contrast, the proposed settlement agreement provides the class with substantial, guaranteed relief." *Lucas*, 234 F.R.D. at 694; *see also McNeely v. Natl'l Mobile Health Care, LLC*, No. CIV–07–933–M, 2008 WL 4816510, *13 (W.D. Okla. Oct.27, 2008) (finding that class "is better off receiving compensation now as opposed to being compensated, if at all, several years down the line, after the matter is certified, tried, and all appeals are exhausted."). An evaluation of the benefits of the Settlement must also be tempered by the recognition that any compromise involves concessions on the part of the Parties. Indeed, the very essence of a settlement agreement is compromise, "a yielding of absolutes and an abandoning of highest hopes." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 624 (9th Cir. 1982) (citation omitted). Simply put, the settlement provides substantial relief to all Class Members promptly and efficiently, and amplifies the benefits of that relief through the economies of class resolution.

### B.   The Settlement Payment Allocation is fair, reasonable, and adequate.

"The Court has also considered whether the distribution plan contained in the settlement is fair, reasonable, and adequate." *Lucas*, 234 F.R.D. at 695. "Allocation formulas ... are recognized as an appropriate means to reflect the comparative strengths and values of different categories of the claim.... An allocation formula need only have a reasonable, rational basis, particularly if recommended by 'experienced and competent' class counsel." *Id. at* 695 (quoting *In re Am. Bank*

*Note Holographics, Inc.,* 127 F.Supp.2d 418, 429–30 (S.D.N.Y.2001)).

Here, the Settlement Payment Allocation is fair because it provides for a recovery based upon actual records of the Class, with each Class Member allocated a separate amount based upon his/her dates of employment. The settlement allows each Class Member to receive an amount from the settlement fund that is based upon each individual's proportionate share of the total damages available to all Class Members in the aggregate, exclusive of attorneys' fees and costs.

Additionally, Plaintiffs' Counsel spent a significant amount of time evaluating the damages and calculating an expected value (EV). The total settlement amount exceeded the EV. (Ex. 2 – Nilges Dec. at ¶¶14-25). Accordingly, the settlement proceeds are fair, reasonable, and adequate.

**C.    The enhancement payments to the Named Plaintiffs are reasonable and appropriate.**

The settlement agreement provides for enhancement payments to the Named Plaintiffs, in the amount of $2,500 each, in recognition of their work in the Civil Actions on behalf of the Class.

"Courts regularly give incentive awards to compensate named plaintiffs for the work they performed—their time and effort invested in the case." *Chieftain Royalty Co. v. Enervest Energy Institutional Fund XIII-A, L.P.*, 888 F.3d 455, 468 (10th Cir. 2017).

As further explained in the Declaration of Class Counsel, the enhancement payments are fair and appropriate, and the amount of the enhancement payments ($2,500 each) is certainly reasonable. *See, e.g., Tuten v. United Airlines, Inc.*, 41 F. Supp. 3d 1003, 1010 (D. Colo. May 19, 2014) (approving $15,000 service award for class representative); *Pliego*, 313 F.R.D. at 131 (finding $7,500 service award reasonable). The services of the Named Plaintiffs were extensive and effective. They provided extensive factual information to Class Counsel, faithfully engaged in calls and other communications with Class Counsel, and subjected themselves to the

14

responsibilities of serving as Named Plaintiffs in a lawsuit against their former employer. (Ex. 2 – Nilges Dec. at ¶26). Accordingly, the enhancement payments should be preliminarily approved.

### D. Class Counsel's attorneys' fees and expenses are proper and reasonable.

The Court should also preliminarily approve of an award of attorneys' fees to Class Counsel in an amount equal to one-third (or $30,833.33) of the gross settlement fund, as well as the expenses incurred in the Civil Actions. "The Tenth Circuit typically applies the percentage-of-the-fund method to determine fee awards when a common fund is created for settlement." *Cazeau v. TPUSA, Inc.*, No. 2:18-cv-00321, 2021 WL 1688540, at *8 (D. Utah Apr. 29, 2021) (citing *Gottlieb v. Barry*, 43 F.3d 474, 483 (10th Cir. 1994)). The percentage reflected in a common fund award must be reasonable. In assessing reasonableness, the Tenth Circuit instructs district courts to consider the following "*Johnson* factors":

> (1) time and labor required, (2) novelty and difficulty of the question presented by the case, (3) skill requisite to perform the legal service properly, (4) preclusion of other employment by the attorneys due to acceptance of the case, (5) customary fee, (6) whether the fee is fixed or contingent, (7) any time limitations imposed by the client or circumstances, (8) amount involved and results obtained, (9) experience, reputation and ability of the attorneys, (10) the "undesirability" of the case, (11) nature and length of the professional relationship with the client, and (12) awards in similar cases.

*Gottlieb*, 43 F.3d at 483. However, "rarely are all of the *Johnson* factors applicable; this is particularly so in a common fund situation." *Uselton v. Commercial Lovelace Motor Freight, Inc.*, 9 F.3d 849, 854 (10th Cir. 1993).

Moreover, this Court has routinely held that, "[i]n situations such as this, where the Proposed Settlement creates a common fund, **attorneys' fees of one-third or thereabouts are generally deemed reasonable**." *Hunter v. CC Gaming, LLC*, No. 19-cv-01979, 2020 WL

13444208 (D. Colo. Dec. 16, 2020) (emphasis added).[3]

Here, Class Counsel—who undertook representation under a contingent-fee basis, and expended significant time and effort and advanced costs without any guarantee of compensation—have acquired a class settlement that provides for a reasonable estimate of damages given the facts of the case and the relative merits of claims and defenses. A bona fide dispute exists as to whether Named Plaintiffs and the Class Members are entitled to any relief. Under Defendant's theory, they would be owed zero. Moreover, Class Counsel consists of attorneys from four (4) different reputable firms, all with substantial experience litigating wage and hour class and collective actions, and the legal theories involved in the Civil Actions required such expertise. Many attorneys would not have understood the nuanced arguments asserted, nor would they have been able to discern whether the Plaintiffs even had a viable claim. Additionally, other lawyers may not have had the expertise to ascertain and evaluate the possible damages awards available to the Class Members. Thus, the work of Class Counsel provided a significant benefit to the Class Members, and reflects Class Counsel's skills and experience. Further, the attorneys' fees requested by Plaintiffs' Counsel should not be altered because counsel efficiently resolved this case rather

---

[3] *see also Suarvedez v. Circle K Stores, Inc*., No. 20-cv-01035, 2021 WL 4947238 (D. Colo. June 28, 2021) ("Even assuming that Plaintiff's counsel requests an amount equal to the stated upper limit—one-third of the total settlement amount—this apportionment of attorney's fees is commonly found reasonable in class settlements"); *Elston v. Horizon Glob. Americas, Inc*., No. CV 19-2070, 2020 WL 6318660, at *7 (D. Kan. Oct. 28, 2020) ("When the proposed settlement creates a common fund, attorneys' fees of one-third or thereabouts are generally deemed reasonable."); *Brandenburg v. Cousin Vinny's Pizza, LLC*, No. 3:16-cv-516, 2019 WL 6310376, at *5 (S.D. Ohio Nov. 25, 2019) (one-third of the fund "is a normal fee amount in a wage and hour case."). In fact, courts in this district have found fees even higher than one-third of the settlement amount to be reasonable. *Shahlai v. Comcast Cable Commc'ns Mgmt., LLC*, No. 16-cv-02556, 2020 WL 3577395, at *4 (D. Colo. July 1, 2020) (finding that a 58.4% fee award was reasonable "considering the effect expended on this case by class counsel, the risks and difficulties inherent in this sort of litigation, the discovery undertaken, and the skill required and dedication displayed over the litigation of this matter"); *Whittington v. Taco Bell of Am., Inc*., No. 10-cv-01884, 2013 WL 6022972, at *6 (D. Colo. Nov. 13, 2013) ("Together the fees and costs amount to approximately 39% of the fund as a whole. This is within the normal range for a contingent fee award.").

than prolonging the litigation and increasing the potential fees. As the Manual for Complex Litigation recognizes, "one purpose of the percentage method is to encourage early settlements by not penalizing efficient counsel, thus ensuring competent counsel continue to be willing to undertake risky, complex, and novel litigation." Manual for Complex Litigation (4th) § 14.121. Had this case not settled, Class Counsel would have vigorously litigated the case without any promise of the success they achieved in reaching the settlement. (Ex. 2 – Nilges Dec. at ¶27). Additionally, Courts have routinely granted Class Counsel's one third fee request in similar class and collective actions.[4]

## V. THE CLASS NOTICE SATISFIES RULE 23 AND DUE PROCESS AND SHOULD BE APPROVED

---

[4] *See, e.g., Ballard v. CoreCivic of Tennessee, LLC*, Case No. Civ. A. 3:20-cv-0418 (M.D. Tenn.); *Jim v. CoreCivic of Tennessee, LLC*, Case No. Civ. A. 1:20-cv-0618 (D. N.M.); *Shumate v. Genesco, Inc., et al.*, Case No. 1:17-cv-03574 (S.D. Ind.); *Klaus v. Humana Pharmacy, Inc*., Case No. 1:19-cv-01025 (S.D. Ohio); *Rosenbohm v. Cellco Partnership*, Case No. 2:17-cv-00731 (S.D. Ohio); *Grayer, et al. v. Kennametal, Inc*., Case No. 1:16-cv-01382 (N.D. Ohio); *Allen v. Sutherland Global Services*, Case No. 6:17-cv-6059 (W.D.N.Y); *Lawrence v. Platinum Home Helper*, Case No. 1:17-cv-1479 (N.D. Ohio); *Fullerton v. Golden Flake Snack Foods, Inc*., Case No. 3:17-cv- 00296 (N.D. Florida); *Miller v. Flowers Baking Co. of Ohio*, Case No. 3:17-cv-725 (N.D.NY.); *Caringi v. Relentless Recovery*, Case No. 1:16-cv-2236 (N.D. Ohio); *Tabor v. A Better Alternative to Senior Care, Inc*., Case No. 1:16-cv-1281 (N.D. Ohio*); Castro v. Heart Home Care, LLC*, Case No. 1:16-cv-571 (N.D. Ohio); *Bainbridge v. Medline Industries*, Case No. 5:16-cv00555 (N.D. Ohio); *Terry v. All Hearts Home Health Care*, Case No. 1:16-cv-515 (N.D. Ohio); *Webber v. Nine Energy*, Case No. 4:15-cv-2406 (S.D. Texas); Swiger, et al. v. Utz Quality Foods, Inc., Case No. 1:15-cv-2196 (M.D. Penn); *Houston, et. al. v. Progressive Casualty Insurance Co*., Case No. 1:15-cv-01853 (N.D. Ohio); *Hillebrandt, et al. v. Horizontal Wireline Services, LLC, et al.,* Case No. 2:15-cv-1307 (W.D. Pa); *Rucker v. Quality Blow Molding*, Case No. 1:15-cv-1039 (N.D. Ohio); Green v. H.A.D., Inc., Case No. 2:15-cv-933 (S.D. Ohio); *Douglas, et al. v. J&K Subway, Inc*., Case No. 4:14-cv-2621 (N.D. Ohio); *McPherson v. Horseshoe Cleveland*, Case No. 1:14-cv-02475 (N.D. Ohio); *Smith v. CMHA*, Case No. 1:14-cv-1409 (N.D. Ohio); *Armbruster v. City of Cleveland*, Case No. 1:13-cv-2626 (N.D. Ohio); *Williams v. Beckett Air, Inc*., Case No. 1:12-cv-2796 (N.D. Ohio); *Welch v. Incept Corporation*, Case No. 5:12-cv-1775 (N.D. Ohio); *Malaj v. Gohlke*, Case No. 1:11-cv-1578 (N.D. Ohio); *Campbell v. Judson Services*, Case No. 1:11-cv-906 (N.D. Ohio); *Murphy v. 1-800-Flowers*, Case No. 1:10-cv-1822 (N.D. Ohio); *Miller v. National Enterprise Systems*, Case No. 1:10-cv-1664 (N.D. Ohio); *Osolin v. Turocy & Watson LLP, et al*, Case No. 1:09-cv-2935 (N.D. Ohio); *Kelly v. National Enterprise Systems*, Case No. 1:09-cv-2268 (N.D. Ohio); *McNelley v. Aldi*, Case No. 1:09-cv-1868 (N.D. Ohio); *Rotuna v. West Customer Management Group*, Case No. 4:09-cv-1608 (N.D. Ohio); *Jackson v. Papa John's*, Case No. 1:08-cv-2791 (N.D. Ohio); *Dillworth v. Case Farms*, Case No. 5:08-cv-1694 (N.D. Ohio); *Fincham v. Nestlé Prepared Foods Company*, Case No. 1:08-cv-73 (N.D. Ohio); *McGhee v. Allied Waste Industries*, Case No. 1:07-cv-1110 (N.D. Ohio).

When a court determines that a settlement warrants preliminary approval, Rule 23(e)(1) requires the Court to "direct notice in a reasonable manner to all class members who would be bound" by the Settlement. *Hunter v. CC Gaming, LLC*, No. 19-cv-01979, 2020 WL 13444208, *8 (D. Colo. Dec. 16, 2020). "For any class certified under Rule 23(b)(3)--or upon ordering notice under Rule 23(e)(1) to a class proposed to be certified for purposes of settlement under Rule 23(b)(3)--the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(b). Additionally, the Rule states that:

> Such notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (v) the binding effect of a class judgment on members under Rule 23(c)(3).

*Id.*; *see also*, *Pliego*, 313 F.R.D. at 132.

Reasonable notice to class members is also required by due process. *DeJulius v. New England Health Care Employees Pension Fund,* 429 F.3d 935, 943-44 (10th Cir. 2005). However, due process "does not require *actual* notice to each party intended to be bound by the adjudication of a representative action." *Id.* at 944 (emphasis sic). Instead, due process requires that the notice be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id.*

The "individual notice" requirement of Rule 23 and due process is fulfilled by sending written notice to class members by first-class mail. *Grunin v. International House of Pancakes*, 513 F.2d 114, 120 (8th Cir. 1975) (citing *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 174-77

(1974)); *see also* Rule 23(c)(2)(b) ("The notice may be by one or more of the following: United States mail, electronic means, or other appropriate means.").

Here, the proposed Class Notice (Ex. 1-C) satisfies all of these requirements. The Notice contains all the information required under Rule 23(c)(2)(b), apprises each Class Member of the pendency of the Civil Actions and their estimated gross settlement allocation, and affords them an opportunity to present their objections. Moreover, under the terms of the Settlement Agreement, the Notices will be sent to all Class Members by the Settlement Administrator by First Class U.S. Mail using each individual's last known address (except that the Settlement Administrator shall perform a national change of address database review prior to mailing). (Ex. 1 at ¶ 4.2(b).) Accordingly, the Notice should be approved.

## VI.    CONCLUSION

For the foregoing reasons, Plaintiffs request that the Court enter an Order substantially as proposed, granting the following relief:  (1) preliminarily certify the Rule 23 Class for settlement purposes; (2) preliminarily approve of the Settlement Agreement; (3) approve the proposed class notice and claim form and direct distribution of settlement notice to all Class Members as proposed; (4) appoint Don J. Foty, Hans Nilges, Anthony Lazzaro, and Carolyn Cottrell as Class Counsel; (5) appoint Plaintiff Rios and Plaintiff Rivera as Class Representatives; (6) preliminarily approve class counsel's attorney's fees and litigation expenses; (7) preliminarily approving the service payments to the Class Representatives; and (8) scheduling a fairness hearing for final approval of the settlement. Defendant does not oppose Plaintiffs' motion for preliminary approval.

Respectfully submitted,

/s/ *Hans A. Nilges*
Hans A. Nilges
Ohio Bar No. 076017
NILGES DRAHER, LLC
7266 Portage Street, N.W. Suite D
Massillon, OH 44646
Tel: (330) 470-4428
Fax: (330) 754-1430
Email: hans@ohlaborlaw.com

Don J. Foty
Texas State Bar No. 24050022
HODGES & FOTY, L.L.P.
4409 Montrose Blvd, Ste. 200
Houston, TX 77006
Tel: (713) 523-0001
Fax: (713) 523-1116
Email: dfoty@hftrialfirm.com
Anthony J. Lazzaro
Ohio Bar No. 0077962
Matthew S. Grimsley
Ohio Bar No. 0092942
THE LAZZARO LAW FIRM, LLC
34555 Chagrin Boulevard, Suite 250
Moreland Hills, Ohio 44022
Tel: 216.696.5000
Fax: 216.696.7005
Email: anthony@lazzarolaw.com
Email: matthew@lazzarolawfirm.com

Carolyn H. Cottrell
California Bar No.: 166977
SCHNEIDER WALLACE COTTRELL
KONECKY LLP
2000 Powell St, Suite 1400
Emeryville, CA 94608
Telephone: (415) 421-7100
Facsimile: (415) 421-7105
Email: ccottrell@schneiderwallace.com

*Attorneys for Plaintiffs and Class Members*

## CERTIFICATE OF SERVICE

I hereby certify that on May 23, 2023, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access the filing through the Court's system.

*/s/ Hans A. Nilges*

## CERTIFICATE OF CONFERRAL

Pursuant to D.C.COLO.LCivR 7.1(a), prior to filing the forgoing Motion Plaintiffs' Counsel emailed it to Defendant's Counsel, and Defendant's counsel responded via email confirming that Defendant does not oppose it.

*/s/ Hans A. Nilges*