**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Case No. 1:21-cv-2295

ALFONSO RIOS, *On Behalf of Himself
and All Others Similarly Situated,*

               Plaintiff,

v.

CORECIVIC OF TENNESSEE, LLC,

               Defendant.

_____

Case No. 1:21-cv-2632

WANDA ROSARIO RIVERA, *On Behalf of
Herself and All Others Similarly Situated,*

               Plaintiff,

v.

CORECIVIC OF TENNESSEE, LLC,

               Defendant.

i

## PLAINTIFFS' UNOPPOSED MOTION FOR
## FINAL APPROVAL OF CLASS SETTLEMENT

Plaintiffs Alfonso Rios ("Rios") and Wanda Rosario Rivera ("Rivera"), by and through their respective counsel (collectively "Plaintiffs"), respectfully submit this unopposed motion requesting final approval of their class settlement with Defendant CoreCivic of Tennessee, LLC ("Defendant"). Plaintiffs seek the Court's final approval of the class and FLSA settlement; final approval of Class Counsel; approval of Class Counsel's fees and costs; final approval of Plaintiffs as Class Representatives; and final approval of Plaintiffs' individual Enhancement Awards for their service as named Plaintiffs and Class Representatives in this action; and any other relief that may be necessary to fully effect the Settlement Agreement executed by the Parties.[1]

## I.     INTRODUCTION

Plaintiffs allege claims against Defendant for failing to compensate non-exempt correctional officers and detention officers in Colorado for all hours worked. After two and a half years of litigation, the parties reached an agreement to resolve Plaintiffs' and Class Members' claims arising under Colorado law and the FLSA (the "Settlement")[2], and executed the written Settlement Agreement on April 26, 2023.

The proposed $92,500.00 Settlement[3] satisfies all criteria for settlement approval, falls well within the range of reasonableness, and provides an excellent recovery for Plaintiffs in this wage-and-hour action; it is a considerable achievement considering Plaintiffs' total damages and the

---

[1] Plaintiffs' Counsel has conferred with Defendant's Counsel, who communicated non-opposition to this Motion.

[2] As discussed below, Class Members other than the Named Plaintiffs do not release their claims for FLSA liquidated damages by this Settlement, and the Settlement contains other exclusions. *See infra* at section II(C).

[3] The proposed $92,500.00 settlement is, exclusive of the employer's share of payroll taxes, the "gross settlement amount." Settlement Agreement, attached as Exhibit A to the Cottrell Declaration filed herewith (the "Cottrell Decl.") (also filed at ECF No. 56-1), at ¶ 1.18. All other payments required under the Settlement will be made from this amount, including payments to Settlement Class Members (i.e., those Class Members who do not request exclusion from the Settlement), as well as Class Counsel's fees and costs, settlement administration expenses, and individual enhancement payments to named Plaintiffs Rios and Rivera. *Id.*

1

risks of proceeding in litigation. Absent settlement, Plaintiffs would have to prevail on certification/decertification, summary judgment, trial, likely post-judgment motion practice, and appeal. At each of these stages, Defendant would present potentially effective arguments to reduce or destroy Plaintiffs' and the Class's recovery. Although Plaintiffs believe they would ultimately defeat Defendant's arguments, Plaintiffs nonetheless would face real risks in pursuing this action through trial and appeal.

Accordingly, Plaintiffs request that the Court approve the Settlement and all related items before it, in an Order consistent with the Proposed Order submitted herewith.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.  The Parties

Defendant CoreCivic of Tennessee, LLC is a foreign limited liability company organized under the laws of Tennessee. *See* ECF No. 19 (Amended Complaint), ¶ 11, discussed *infra*. Defendant is an "employer" under the FLSA (*id.*; 29 U.S.C. § 203(d)), and is a service company under applicable Colorado Overtime Minimum Pay Standards ("COMPS") Orders (*id.* at ¶ 12; ECF No. 41[4], ¶¶ 8-12).

Plaintiff Alfonso Rios worked for Defendant as a correctional officer during the class period at Defendant's Olney Springs location in Crowley County, Colorado. ECF No. 19 at ¶ 7. Plaintiff Wanda Rivera also worked for Defendant at the Olney Springs location. ECF No. 41 at ¶ 6. The Class Members were employed by Defendant as Correctional Officers, Senior Correctional Officers, Detention Officers, or Senior Detention Officers in the State of Colorado, at any time during the period between March 16, 2020 (the effective date of Colorado Overtime Minimum Pay Standards ("COMPS") Order No. 36), and September 16, 2022. The Settlement Class consists of specific individuals the Parties agreed on, including additional Settlement Class Members

---

[4] Rivera's Complaint re-filed in this case for settlement purposes, alleging that Defendant is an employer within the meaning of Colorado law and a service company under the COMPS Orders.

identified by Defendant after the initial list was provided. *See* Settlement Agreement, ¶ 1.5-1.6.

## B.  The Pleadings

Rios filed his Complaint against Defendant on August 25, 2021 (ECF No. 1), commencing this lead case, *Rios v. CoreCivic of Tennessee, LLC,* Case No. 1:21-cv-2295 ("*Rios*"). Rios filed a class action, alleging claims under Colorado law on behalf of a group of correctional officers and detention officers in Colorado for failure to pay wages for all hours worked, including the time spent undergoing required security screenings prior to the start of their shifts. *Id.* at ¶¶ 1-2, 7. Defendant answered Rios's Complaint on September 21, 2021. ECF No. 9.

Rivera filed her Complaint against Defendant on September 28, 2021, commencing the case *Rivera v. CoreCivic of Tennessee, LLC*, Case No. 1:21-cv-2632 ("*Rivera*"). *See Rivera*, ECF No. 1. Rivera's Complaint alleged similar claims to those in *Rios*, on behalf of the same group of correctional officers and detention officers, pursuant to the Colorado Wage Claim Act[5] and COMPS. *Id.* at ¶ 2. On October 26, 2021, Defendant filed its Answer to Rivera's complaint. *Rivera*, ECF No. 11; *see also* ECF No. 42 (Answer re-filed in this case). On February 22, 2022, Rios filed an Amended Complaint adding claims under the FLSA. ECF No. 19. Defendant answered Rios's Amended Complaint on March 8, 2022. ECF No. 23.

## C.  Mediation, Settlement, and Related Filings

In September and October 2022, the Parties began discussing a potential informal resolution of these actions. The Parties agreed to mediate with Carole Katz, a respected wage and hour mediator. Cottrell Decl., ¶ 17. The mediation was scheduled for October 6, 2022, as a joint global mediation covering the claims alleged in both *Rios* and *Rivera*. *Id.* Defendant provided Plaintiffs with extensive informal discovery, including detailed time and payroll records, ahead of this mediation; Plaintiff used these data and documents to prepare exhaustive damages analyses.

On October 6, 2022, the Parties held the joint mediation before Ms. Katz. Through

---

[5] Colo. Rev. Stat. §§ 8-4-101 *et seq*.

extensive investigation, analysis of discovery, and a full day of arm's-length negotiations with the mediator, the Parties were able to arrive at the Settlement. *Id.* at ¶ 20. After confirming the key terms in writing with the mediator, Class Counsel worked to prepare the proposed settlement agreement and corresponding notice documents, subject to the Court's approval. *Id.* at ¶¶ 21-22. The draft and review process included multiple "redline" revisions, discussion with defense counsel regarding governing case law, legal research, and related communications. *Id.* The Parties agreed that the actions should be consolidated for settlement purposes. Settlement Agreement, ¶ 1.2. Accordingly, on January 9, 2023, Rios filed an unopposed motion to consolidate the *Rios* and *Rivera* cases for settlement purposes. ECF No. 39. The next day, the Court ordered the cases be consolidated for the purpose of settlement. ECF No. 40. Pursuant to the Court's Order, Rivera then re-filed her Complaint in this action (ECF No. 41), and CoreCivic re-filed its Answer (ECF No. 42) to Rivera's Complaint. *Id.*; *see* Cottrell Decl., ¶¶ 23-24; ECF No. 43 (Jan. 18, 2023 joint status report regarding the settlement).

### D.  Preliminary Approval, Notice, and Class Members' Response

On May 18, 2023, Plaintiffs filed their unopposed motion for preliminary approval of the Settlement. ECF No. 54. The Court granted preliminary approval, directed notice to Settlement Class Members, and set a date for the Fairness Hearing. ECF No. 57. As part of its Order, the Court certified the Rule 23 class for settlement purposes only (*id.* at ¶ 1); approved Rios and Rivera as Class Representatives with respect to the Settlement (*id.* at ¶ 3); appointed as Class Counsel for the Settlement Class Don J. Foty, Hodges & Foty, L.L.P.; Hans Nilges, Nilges Draher LLC; Anthony Lazzaro, The Lazzaro Law Firm, LLC; and Carolyn H. Cottrell, Schneider Wallace Cottrell Konecky LLP (*id.* at ¶ 4); approved Analytics as the Settlement Administrator; and approved the proposed Notice to the Settlement Class and the proposed manner of distribution. *Id.* at ¶¶ 6, 8. Following the Court's Order on preliminary approval, Analytics received the class list from Defendant on August 23, 2023. ECF No. 58-1 (Declaration of

Mitchell regarding notice administration), ¶ 6. The Class List identified 292 Class Members, with names, addresses, Social Security numbers, and settlement allocations. *Id.* Analytics checked the Class List against the United States Postal Service National Change of Address (NCOA) database to standardize and update the Class members' mailing addresses. ECF No. 58-1 at ¶ 7. *See also* Cottrell Decl., ¶ 33.

Analytics prepared individual versions of the Notice for mailing to Class Members. *Id.* at ¶ 6, Exh. A at p. 1. The mailed Notices informed the Class Members of the Settlement, their expected individual allocations, the deadline to opt-out or object, the date of the Fairness Hearing, and that Plaintiffs would seek attorneys' fees, costs, and representative enhancement awards, with amounts and contact information for Class Counsel. *Id.* On August 28, 2023, Analytics mailed the approved Notice to Class Members. *Id.* at ¶ 8. On September 19, 2023, Plaintiffs filed the declaration of Jeffrey J. Mitchell of Analytics, which set out the facts regarding the notice mailing and Analytics's qualifications. *Id.*

The Parties subsequently discovered that in addition to the 292 Class Members initially identified, there were 387 additional Class Members who were not named on Defendant's initial list (a total of 679 Class Members). The Parties filed a joint motion to continue the fairness hearing (ECF No. 59, filed Nov. 20, 2023) so that these 387 Class Members omitted from the initial mailing could receive notice and have their opportunity to object or opt out. *Id.*; *see also* Cottrell Decl., ¶ 33. Analytics agreed to administer the additional mailing at no additional charge. Cottrell Decl., ¶ 33. On November 20, 2023, the Court granted the Parties' joint motion to continue the fairness hearing. ECF No. 60. The Court ordered Class Counsel to file appropriate proof of mailing to the additional Class Members by December 15, 2023, and that "The 387 Class Members will be bound by the same terms as outlined in the Parties' Settlement Agreement, the Court's Order Granting Plaintiffs' Unopposed Motion for Preliminary Approval of Class Settlement (ECF No. 57), and any final approval order to be entered in this matter as if these individuals originally received

notice in accordance with the Settlement Agreement." *Id.* The Court set January 22, 2024, as the deadline for objections and opt-outs, and continued the fairness hearing to March 21, 2024, at 10:00 a.m., with Class Counsel's motion for final approval, attorneys' fees and costs, and class representative enhancements to be filed by February 15, 2024, later extended to February 22, 2024. *Id.*; ECF No. 65.

On December 8, 2023, Analytics mailed the notice in the same manner to the 387 additional Settlement Class Members. On December 15, 2023, Plaintiffs filed a second declaration of Mitchell explaining that Analytics mailed the supplemental notices, with a copy of a template version attached. ECF No. 61-1; *see* ¶ 2, Exh. A. Analytics did so at no additional charge, and the $20,238.38 required to account for the additional settlement allocations are being deducted from the fees of Class Counsel. Cottrell Decl., ¶ 33; *see also* Declaration of Hans Nilges at ¶ 15. This allows the total recovery available to the Class to remain unaffected. *Id.* As explained in the attached Declaration of Mitchell (the "Mitchell Decl."), there have been no requests for exclusion or objections to the Settlement. Mitchell Decl. at ¶¶ 15-16. *See also Id.*, ¶ 34. Following the Court's final approval, Analytics will disburse settlement checks to Class Members.

### E. Fairness Hearing and Final Settlement Approval

The Fairness Hearing is scheduled for March 21, 2024. *See* ECF No. 60. By this motion, Plaintiffs ask the Court to grant final approval of the Settlement. The Court should do so given the substantial recovery achieved by the Class Members and their positive reaction to the Settlement. Following the Court's Order on final approval, the Parties and Analytics will execute the final steps in the settlement process, including disbursement to Settlement Class Members.

### III. SUMMARY OF SETTLEMENT TERMS

The Parties' proposed Settlement is set forth in full in the written Settlement Agreement executed by the Parties, and reflects a compromise of *bona fide* disputed claims. The settlement terms and value are discussed in detail below.

### A. Basic Terms, Allocations, and Timeline

The settlement provides for a maximum settlement amount of $92,500, exclusive of employer share of payroll taxes (the "gross settlement amount"). Settlement Agreement, ¶ 1.17. All other payments required under the settlement will be made from this amount, including payments to participating Settlement Class Members, Class Counsel's attorneys' fees and costs, the Settlement Administrator's expenses, and Enhancement Payments to Rios and Rivera as the Named Plaintiffs. *Id.* The Agreement specifies individuals who are eligible to participate in the Settlement, consistent with the class definition set forth in the pleadings. Settlement Agreement, ¶ 1.5, Exh. D (identifying relevant individuals by employee ID number); *see supra* at II(A) (class definition in pleadings).

Subject to the Court's approval, the Settlement Agreement allocates $30,833.33 (one-third of the $92,500.00 gross settlement amount), less $20,238.38 for a total of $10,594.95, to Class Counsel's attorneys' fees, and up to $10,000.00 to costs, a total of $20,594.95. Settlement Agreement, ¶ 1.17(b); ECF No 59 at 3; Nilges Dec. at ¶ 15. The Settlement further provides for individual enhancement payments in the amount of $2,500.00 each for Rios and Rivera (a total of $5,000.00), and up to $7,000.00 for settlement administration costs, both to be paid from the gross settlement amount. *Id.* at ¶ 1.17(d). The rest of the settlement amount is available to the Class. *See id.* at ¶ 1.17. The individual settlement payments for which Class Members are eligible ("individual settlement allocation") have been calculated proportionally by Class Counsel based on the time and pay records informally produced by Defendant. *Id.* at ¶ 3.1.; *see also* Cottrell Decl., ¶ 52. For both the named Plaintiffs and the Settlement Class Members, settlement payments are allocated 36% to wages and 64% to penalties/non-wage recovery. Settlement Agreement, ¶ 5.3(a).

Within 7 days of the Effective Date, the Settlement Administrator will provide counsel for both parties with a report stating the total amount required for Defendant to satisfy all payment obligations under the Settlement Agreement. *Id.* at ¶ 5.1. Within 14 days of the Administrator's

report, Defendant will pay into the Settlement Administrator's escrow account the total amount needed to satisfy all of its obligations under the Settlement Agreement. *Id.* at ¶ 5.2. The Settlement Administrator then has 7 days to make the payments pursuant to the Settlement Agreement and Final Approval Order. *Id.* at ¶ 5.3.

### B.  Scope of Releases and Final Judgment

The Settlement Agreement provides that Rios and Rivera release Defendant and specified related corporate entities from any and all claims and causes of action of any kind arising out of work performed at any time through September 16, 2022, that were or could have been asserted in the *Rios* and *Rivera* cases, as well as their individual claims for liquidated damages under the FLSA. Settlement Agreement, ¶¶ 1.16, 6.1-6.2. Similarly, the Settlement Class Members release all claims and causes of action of any kind arising out of work performed at any time from March 16, 2020 through September 16, 2022, that were or could have been asserted in these cases. *Id.* at ¶ 1.16.[6]

However, while the named Plaintiffs release their claims for FLSA liquidated damages, Settlement Class Members do not release FLSA liquidated damages claims. *Id.* at ¶ 6.4. Further, Plaintiffs and Settlement Class Members do not release or waive claims under the Age Discrimination in Employment Act, for unemployment, for workers' compensation, that cannot be released as a matter of law, their right to file an administrative charge, and any rights or claims arising after October 2, 2019. *Id.* at ¶ 6.3.

Plaintiffs and Settlement Class Members will have 180 days to cash their settlement checks. *Id.* at ¶ 5.7. The agreement provides that after 120 days, the Administrator will provide a report on those Settlement Class Members who have not cashed their checks, and Class Counsel will be free to contact any such individuals to encourage them to promptly do so. *Id.* Thereafter,

---

[6] The release covers derivative claims, including penalties, COMPS Orders liquidated damages, interest, attorneys' fees, and costs and/or expenses. *Id.; see also* ¶¶ 2.7-2.8, 6.1-6.2; Proposed Order at ¶ 9.

settlement checks will be void, and any such funds will revert to Defendant, with the Settlement Administrator to issue any necessary corrected tax reporting. *Id.* Settlement Class Members who fail to timely negotiate their checks will still be bound by the Settlement Agreement's terms. *Id.*; *see also* ¶ 5.8). District Courts have approved settlements using this procedure. *See, e.g., Salinas v. United States Xpress Enters., Inc.*, 2018 U.S. Dist. LEXIS 50800, *20 (E.D. Tenn. 2018) (finding "the provision that settlement members who are provided checks but do not cash them will still be subject to the release of claims to be fair"). All members of the Settlement Class who do not timely and properly exclude themselves from the class will be bound conclusively by the Settlement Agreement and any judgment entered upon final approval. ECF No. 57 (preliminary approval order) at ¶ 12; *see also* Settlement Agreement at ¶ 5.7.

## IV. THE COURT SHOULD GRANT FINAL APPROVAL OF THE SETTLEMENT

### A. Plaintiffs and Class Counsel Have Adequately Represented the Class

Rule 23(e)(2)(A) requires the Court to consider whether Plaintiff and Class Counsel have adequately represented the Class in this case. *See In re Samsung Top-Load Washing Mach. etc.*, 997 F.3d 1077, 1092 (10th Cir. 2021) ("before granting final approval to a settlement, a district court must assure itself that class counsel has adequately represented the class"), quoting Fed. R. Civ. P. 23(e)(2)(A))(internal quotation omitted). Thus, the adequacy requirement asks: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members"? and, "(2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Murray v. Tips, Inc.*, 2020 WL 1852382, 2020 U.S. Dist. LEXIS 63923, at *9-10 (D. Colo. 2020) (internal quotation omitted).

Here, the named Plaintiffs have diligently and vigorously prosecuted this action in the interests of the Class, and there is no evidence nor reason to believe they have any interests adverse to Class Members. They assert the same claims as class members and have acted with the class's

interests in mind at all times. Likewise, the named Plaintiffs' attorneys are well-respected litigators who specialize in wage and hour class and representative actions, as set out in supporting written testimony from counsel filed in support of this motion. Accordingly, this factor favors approval of the Settlement.

### B. The Settlement was Negotiated at Arm's Length

Settlements that "result[] from arm's-length negotiations between experienced counsel after significant discovery had occurred, the settlement should be presumed to be fair and adequate." *Kurlander v. Kroenke Arena Co., LLC*, 2018 U.S. Dist. LEXIS 62863, at *6 (D. Colo. 2018). "Courts have consistently refused to substitute their business judgment for that of counsel, absent evidence of fraud or overreaching." *Oppenlander v. Standard Oil Co.*, 64 F.R.D. 597, 624-625 (D. Colo. 1974).[7]

Here, counsel for both sides are experienced, capable, and knowledgeable in complex class litigation. *See supra* at 11; *see also* Cottrell Decl., ¶¶ 35-37. The Parties negotiated the settlement of this case with the assistance of a well-respected wage and hour mediator, Carole Katz. *Id.* at ¶ 20. Negotiations were always non-collusive and at arm's length. *Id.* Further, Defendant produced detailed data and documents, including time and pay records for a representative sampling of the Class Members, so that Plaintiffs' Counsel could create detailed damages models. *Id.* at ¶¶ 17-19. Class Counsel discussed their respective analyses and used them to inform their settlement negotiations and decision. *Id.* at ¶ 19. Accordingly, this factor weighs in favor of final approval.

---

[7] *See also, e.g., Seiffer v. Topsy's International, Inc.*, 70 F.R.D. 622, 626 (D. Kan. 1976) ("In evaluating the terms of the settlement agreements, we are mindful of the rule that we are not to substitute our own business judgment for that of counsel absent evidence of fraud or overreaching, which is completely absent on the record before us"; *Gassel v. Am Pizza Partners, L.P.*, 2016 U.S. Dist. LEXIS 195831 at *15 (D. Colo. 2016) (approving settlement in part because "the parties have shown that they believe the settlement is fair and reasonable"); Manual for Complex Litigation (Third) § 30.42 (1995)) ("a presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery").

### C.  The Proposed Relief to the Class is Adequate

Rule 23(e)(2)(C) requires the Court to consider whether the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class; (iii) the proposed terms of any award of attorneys' fees; and (iv) any agreement required to be identified under Rule 23(e)(3). Fed. R. Civ. P. 23(e)(2)(C)(i–iv).

With an average payment of approximately $130 per 679 Class Members, the gross settlement amount of $92,500.00[8] represents approximately 105% of unpaid overtime at approximately 41.9 minutes per week of unpaid security check and ten minutes per week of unpaid COVID screening time. Accordingly, the amount recovered for the class is exceptional, as it will provide meaningful awards to all Class members who do not exclude themselves. Nilges Decl., ¶ 12; Cottrell Decl., ¶ 50. Whatever metric it is measured against, the Settlement is a fair compromise and a positive result for Class Members. *See, e.g., Villegas v. J.P. Morgan Chase & Co.*, 2012 U.S. Dist. LEXIS 166704, 2012 WL 5878390 at *6 (N.D. Cal. 2012) (settlement of 15% of potential recovery adequate); *In re Mego etc.*, 213 F.3d 454, 459 (9th Cir. 2000) (settlement of 16.67% of potential recovery adequate); *Geiger v. Z-Ultimate Self Def. Studios LLC*, 2017 U.S. Dist. LEXIS 232669, at *16-17 (D. Colo. 2017) (finding settlement "fair and reasonable ... in light of the risks of further litigation", citing *Villegas* and *In re Mego*).

This proposed relief confers a significant benefit on Class Members, who will receive Settlement checks without the need to submit claims forms and without the time, effort, and uncertainty inherent in trial. The Settlement should be approved as fair, reasonable, and adequate in light of the considerations set forth in Rule 23(e)(2)(C)(i–iv). These are discussed in detail

---

[8] This is exclusive of Defendant's share of payroll taxes, which Defendant will pay separately. Moreover, where, as here, the defendant pays the justifiable cost of notice to the class, it is reasonable to include that cost in a putative common fund benefiting the plaintiffs for all purposes. *See, e.g., Staton v. Boeing Co.*, 327 F.3d 938, 975 (9th Cir. 2003).

below.

### 1.    Costs, Risks, and Delay of Trial and Appeal

The Settlement satisfies Rule 23(e)(2)(C)(i) considering the likely expense and timeline of trial and appeal. In continuing litigation, Plaintiffs and Class Members would have to prevail at class certification, decertification, summary judgment, trial, and appeal. At each stage, Defendant would present arguments that could potentially reduce or destroy Plaintiff and the Class Members' recovery. Among other things, Defendant maintainshat it complied with the operative law during the relevant period, and pled affirmative and other defenses (*see* ECF Nos. 9, 23, and 42; respectively, Defendant's Answer, Amended Answer, and Answer to Rivera's Complaint) which may have limited or negated its liability. Also, Defendant could potentially argue as a practical matter that previous settlements in related cases[9] should limit the Class Members' recovery in this action. These are serious questions of law and fact that create great uncertainty in the class members' ability to recover anything.

"The presence of such doubt tips the balance in favor of settlement because settlement creates a certainty of some recovery, and eliminates doubt, meaning the possibility of no recovery after long and expensive litigation." *McNeely v. Nat'l Mobile Health Care, LLC*, 2008 U.S. Dist. LEXIS 86741, at *31–41 (W.D. Okla. 2008). Moreover, the complexity, uncertainty, additional expense, and likely duration of further litigation also favor final approval of the Settlement. *See In re Motor Fuel Temperature Sales Practices Litig.*, 258 F.R.D. 671, 681 (D. Kan. 2009) (granting preliminary approval because, among other things, "[t]he costs of continued litigation are high, and it is possible that plaintiffs could receive little or no pecuniary relief"). "The class will be well compensated ... and is better off receiving compensation now as opposed to being compensated, if at all, several years down the line, after the matter is certified, tried, and all appeals are exhausted."

---

[9] *Dew v. CoreCivic of Tenn.*, LLC, No. 3:18-CV-847 (M.D. Tenn.); *Ballard v. CoreCivic of Tenn.*, LLC, No. 3:20-CV-418 (M.D. Tenn.); and *Jim v. CoreCivic of Tenn., LLC*, No. 1:20-CV-618 (D.N.M.).

*McNeely*, 2008 U.S. Dist. LEXIS 86741 at *31-41. The Settlement is risk-free and provides for significant recovery to Class Members immediately. Given the risks involved in any lawsuit, courts commonly approve settlements representing a fraction of plaintiffs' potential recovery. *See Geiger,* 2017 U.S. Dist. LEXIS 232669 at *16-17 (finding value of settlement outweighed the mere possibility of future relief and protracted and expensive litigation); *In re Mego*, 213 F.3d at 459; *Singleton v. First Student Mgmt. LLC*, 2014 U.S. Dist. LEXIS 108427, *19 (D.N.J. 2014) (settlement "may be appropriate" even if "only a fraction of the ultimate total exposure should the case be decided at trial").

Without the settlement, the Parties each would likely spend hundreds or thousands of hours litigating these claims through class certification, discovery, dispositive motions, and trial—let alone any appeals. This would cost each side well into six figures, potentially seven, in expenses and attorney's fees, with no guarantee of success. Considering the time and risk involved in maintaining this litigation, the proposed relief is a fair and adequate compromise.

## 2. Effectiveness of the Proposed Method of Distributing Relief to Class Members

Rule 23(e)(2)(C)(ii) instructs courts to consider the adequacy of the proposed relief in light of the "proposed method of distributing relief to the class, including the method of processing class-member claims." Fed. R. Civ. P. 23(e)(2)(C)(ii). The Court must "scrutinize the method of claims processing to ensure that it facilitates filing legitimate claims [and to] be alert to whether the claims process is unduly demanding." *Id*., Advisory Committee Notes (Dec. 1, 2018).

Here, the Settlement Administrator will distribute individual settlement payments to Class Members who do not opt out as specified by the settlement agreement. Each Class Member received an individualized Notice with their estimated settlement award and explanation. (*See* ECF Nos. 58-1, 61-1.) Class Members will receive their awards without the need to file a claim form or take any other affirmative steps, meaning concerns regarding the claims process are nonexistent.

Class Members will have 180 days to cash their Settlement Checks, and after 120 days, Class Counsel will have a report from the Settlement Administrator and a 60-day period to contact any Class Members who have not cashed their checks. Settlement Agreement at ¶ 5.7. The proposed method of distributing relief to the Class is fair, adequate, and reasonable.

### 3.    The Proposed Attorneys' Fees and Costs Award

Rule 23(e)(2)(C)(iii) requires the Court to consider "the terms of any proposed award of attorney's fees, including timing of payment" in assessing the adequacy of the proposed relief. Fed. R. Civ. P. 23(e)(2)(C)(iii); *see also* Advisory Committee Notes (Dec. 1, 2018) ("Examination of the attorney-fee provisions may also be valuable in assessing the fairness of the proposed settlement"). Here, Plaintiffs seek approval of an award of their attorneys' fees and costs in the amounts provided in the Settlement Agreement of $20,594.95, which is one-third (1/3) of the gross settlement amount ($30,833.33) less $20,238.38 required to account for additional settlement allocations, for fees and $10,000.00 for litigation costs. Cottrell Decl., ¶ 33, 38; Nilges Dec. at ¶ 15. The proposed fees and costs award is discussed below in section V(B). Consistent with the authorities cited therein, the requested fee award, less than 1/3 of the gross settlement amount, is within the range approved by District Courts.[10]

### D.  The Settlement Treats Class Members Equitably

This factor seeks to avoid a settlement that provides disproportionate relief to some Class Members relative to others. *See* Fed. R. Civ. P. 23, Advisory Committee Notes (Dec. 1, 2018). Questions a court may ask when determining whether a proposed settlement is fair under this factor "could include whether the apportionment of relief among class members takes appropriate account of differences among their claims." *Id.*

---

[10] Rule 23(e) also requires the Court to consider the fairness of the proposed settlement in light of "any agreement made in connection with the propos[ed settlement]." Fed. R. Civ. P. 23(e)(2)(C)(iv)–(D). Here, the only agreement between the parties is the Settlement Agreement itself. Accordingly, this factor favors final approval.

Here, the Parties have agreed on a specific, proportionate allocation, set forth in writing as Exhibit D to the Settlement Agreement. This settlement allocation was determined by Class Counsel based on the time and pay records informally produced by Defendant. It takes into account the number of workweeks each Class Member worked within the agreed Class definition and time period, so that each Class Member's recovery is proportionate to his or her service time. *See* Settlement Agreement, ¶ 3.1, Exh. D; Cottrell Decl., ¶ 52; *Cisneros v. EP Wrap-It Insulation, LLC*, No. 19-500 GBW/GJF, 2021 U.S. Dist. LEXIS 130999, at *26 (D.N.M. July 14, 2021) (approving settlement that "treats all class members the same, providing that they will receive their pro rata shares at the same time and that the shares will be determined by application of an identical formula, ensuring an equitable allocation" based on hours worked). Accordingly, the proposed settlement treats Class Members equitably relative to each other, and this factor supports final approval.

### E.  The Settlement Meets FLSA Standards for Settlement Approval

A similar standard applies for settlement approval under FLSA as under Rule 23. In the FLSA context, the court must determine whether the proposed settlement is "a fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Pliego v. Los Arcos Mexican Rests., Inc.*, 313 F.R.D. 117, 127–28 (D. Colo. 2016) (*citing Lynn's Food Stores v. United States*, 679 F.2d 1350, 1353, 1355 (11th Cir. 1982).[11] Indeed, if a bona fide dispute between the parties exists, "courts often apply the Rule 23 factors in evaluating the fairness of an FLSA settlement." *Cavazos*, 2022 U.S. Dist. LEXIS 30201 at *16-17 (E.D. Cal. 2022) (internal quotation and citation omitted).

As discussed herein, the Settlement satisfies the requirements of Rule 23(a) and (b), and it

---

[11] *See also, e.g., Herring v. Thunder Ridge Trucking & Filtration, Inc.,* 2016 U.S. Dist. LEXIS 182807, at *5 (D. Colo. 2016) (courts should consider whether "'(1) the FLSA settlement [wa]s reached as a result of a bona fide dispute, (2) the settlement is fair and equitable to all parties, and (3) the settlement contains a reasonable award of attorney's fees"); *Baker v. Vail Resorts Mgmt. Co.*, 2014 U.S. Dist. LEXIS 22812, at *3 (D. Colo. 2014) (discussing factors by which parties may establish a bona fide dispute exists).

is fair, reasonable, and adequate in accordance with both Rule 23(e)(2) and FLSA case law. For the reasons it meets Rule 23's stringent standards, the Settlement meets the FLSA standards for settlement approval. *See Gamble v. Boyd Gaming Corp.*, 2017 U.S. Dist. LEXIS 25497, 2017 WL 721244, at *9 (D. Nev. 2017) (FLSA "standard for approval" of settlement "is lower than for a Rule 23 settlement because an FLSA settlement does not implicate the same due process concerns"). Accordingly, the Court should approve the FLSA component of the Settlement[12].

### F. The Court Should Approve the Named Plaintiffs' Individual Enhancement Awards

"Service of incentive awards are an efficient and productive way to encourage members of a class to become class representatives, and to reward the efforts they make on behalf of the class." *Dickerson v. Zayo Grp., LLC*, No. 20-cv-02490-DDD-NRN, 2022 U.S. Dist. LEXIS 238467, at *19 (D. Colo. Oct. 31, 2022) (internal quotation marks omitted). When evaluating whether a proposed service award is reasonable, courts may consider factors such as "'the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefited from those actions, . . . the amount of time and effort the plaintiff expended in pursuing the litigation . . . and reasonabl[e] fear[s of] workplace retaliation.'" *Rodriguez v. 5830 Rest. Corp.*, No. 21-cv-01166-KLM, 2023 U.S. Dist. LEXIS 18906, at *37 (D. Colo. Feb. 3, 2023) (*quoting Staton*, 327 F.3d at 977) (alteration in Staton).

Here, Rios and Rivera each contributed many hours to this case. Cottrell Decl., ¶ 56. Each has provided substantial information, reviewed the pleadings on file, and communicated actively with Class Counsel. Cottrell Decl., ¶ 53. The named Plaintiffs took part in the Settlement decision and have remained apprised of the actions at all times since they chose to serve as named Plaintiffs and Class Representatives. *Id.* Due to Plaintiffs' efforts, the Class Members will receive a

---

[12] Likewise, because the class satisfies Rule 23's requirements, potential FLSA collective members are also similarly situated. *See Avendano v. Averus, Inc.*, Civil Action No. 14-cv-01614-CMA-MJW, 2015 U.S. Dist. LEXIS 42223, at *10-11 (D. Colo. Mar. 31, 2015) ("The 'similarly situated' standard is considerably less stringent than Rule 23(b)(3) class action standards.")

significant recovery if the Settlement is approved. *Id.* Further, Plaintiffs placed themselves at risk by serving as class representatives. For example, they faced potential risks: (a) to their reputation in their community as a result of stepping forward publicly in a class action; (b) to their reputation as it concerns their future employment opportunities; (c) that they would be subject to intrusive discovery and time demands in this litigation; and (d) that they would have to pay defense costs if they lost this case. *Id.* at ¶ 54. In fact, Plaintiff Rivera already experienced what may be retaliation for this lawsuit, as Bernadillo Metropolitan, Front Staffing, and the Department of Correctional Service declined to hire her, and Front Staffing questioned her about this lawsuit. *Id.* The Named Plaintiffs nevertheless choose to face these risks to challenge the way that Defendant treated its employees on behalf of the Class, who they believed suffered similar violations of wage and hour law. *Id.* Despite these risks, the Named Plaintiffs chose to step up to challenge the way that Defendant treated its employees, on behalf of a Class who they believed suffered similar violations of wage and hour law. They took their roles as Class Representatives to heart and took their duties as Class Representative seriously despite concerns that their participation in this case could result in negative consequences. *Id.* The enhancement figure is also reasonable given the District of Colorado's prior rulings. *See, e.g., Rothe v. Battelle Mem. Inst.*, No. 1:18-cv-03179-RBJ, 2021 U.S. Dist. LEXIS 117836, at *36–38 (D. Colo. June 24, 2021 (D. Colo. June 24, 2021) (approving a service award of $80,000 to be paid to three named plaintiffs and citing other cases finding $7,500 to be an appropriate general number).

Accordingly, the Court should approve the proposed incentive awards of $2,500.00 each to compensate the Named Plaintiffs for the time they spent on this case, the risks they undertook by participating, the broader release they are providing in Defendant's favor, and the benefit provided by to the Class Members by the $92,500.00 Settlement made possible by their service.

## V.    THE COURT SHOULD FINALLY CERTIFY THE CLASS

In its July 27, 2023 preliminary approval order (ECF No. 57), the Court preliminarily

certified the Class defined as "All individuals who, at any time during the period between March 16, 2020, and September 16, 2022, were employed by CoreCivic as a Correctional Officer, Senior Correctional Officer, Detention Officer, or Senior Detention Officer in the State of Colorado." ECF No. 57, ¶ 1. The Court should now finally certify this Class in its Final Approval Order. The Class meets all the requirements for final approval, as set forth below.

### A.  The Class Is Sufficiently Numerous

Rule 23(a)(1) requires that a proposed class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "'Impracticable' does not mean 'impossible,' and a plaintiff only need establish the difficulty or inconvenience of joining all members of the class." *Pliego v. Los Arcos Mexican Rests., Inc.*, 313 F.R.D. 117, 125-126 (D. Colo. 2016). "There is no minimum numerical threshold which must be exceeded ... Rather, the nature of the particular case, and the nature of the proposed class, are key considerations in determining whether joinder of all parties is not practical." *Pliego*, 313 F.R.D. at 126 (quotation omitted). While the Tenth Circuit has declined to adopt a numerical presumption, *see Box Elder Kids, LLC v. Anadarko E&P Onshore, LLC*, 343 F.R.D. 215, 218-219 (D. Colo. 2022), other courts have presumed numerosity when the proposed class consists of 40 members or more.[13]

Here, there are 679 Class Members. Cottrell Decl., ¶ 54. This number makes joinder impracticable and the class action procedure appropriate. *See, e.g., Horn v. Associated Wholesale Grocers, Inc.*, 555 F.2d 270, 275 (10th Cir. 1977) (numerosity met by class of 46 plaintiffs).

### B.  There Exist Questions of Law and Fact Common to the Class

Rule 23(a)(2) requires "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). However, basic questions common to any "competently crafted class complaint", such as whether plaintiffs worked for defendant or whether defendant had control over plaintiffs' pay,

---

[13] *See, e.g., Consols. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995); *Alcantara v. CNS Mgmt., Inc.*, 264 F.R.D. 61, 64 (S.D.N.Y. 2009).

are not sufficient. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349–50 (2011) (quotation omitted). Instead, what matters is whether a class action would "generate common *answers* apt to drive resolution of the litigation." *Id*. at 350 (internal quotation marks omitted; emphasis original). *See also, e.g., Sherman v. Trinity Teen Sols., Inc.*, 84 F.4th 1182, 1192-1193, 10th Cir. 2023) (*quoting Wal-Mart*). Commonality "does not require that every member of the class share a fact situation identical to that of the named plaintiff. A finding of commonality requires only a single question of law or fact common to the entire class." *Sherman*, 84 F.4th at 1192-1193, *quoting Colo. Cross Disability Coal. v. Abercrombie & Fitch Co*., 765 F.3d 1205, 1216 (10th Cir. 2014) (internal quotation marks omitted).

Here, there are significant questions common to the Plaintiffs and Class Members, including: (1) whether Defendant failed to pay wages for all their time worked; (2) whether Defendant failed to provide compliant wage statements; and (3) whether Defendant violated Colorado minimum wage law via their standardized policies and procedures, including but not limited to security screening, timekeeping, and payroll practices. Because Plaintiffs' and Class Members' claims all derive from the same injuries caused by the same alleged unlawful practices by Defendant, each of these questions will generate common answers as described by the Supreme Court in *Wal-Mart.* Accordingly, the commonality requirement is satisfied.

### C.  Plaintiffs' Claims Are Typical of Those of the Class Members

Rule 23(a)(3) requires that a class representative's claims be "typical of the claims … of the class." Fed. R. Civ. P. 23(a). "Typicality is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Or. Laborers Emplrs. Pension Trust Fund v. Maxar Techs*., 2021 U.S. Dist. LEXIS 132621, *6 (D. Colo. 2021) (internal quotation marks omitted). Here, Plaintiffs and the Class Members were all employed by Defendant in the roles specified in the Settlement Agreement, which have similar duties and responsibilities relating to Defendant's correctional

operations. Plaintiffs' claims arise from the same alleged wage violations that give rise to the Class Members' claims: Defendant's alleged failure to pay for all hours worked due to policies such as pre-/post-shift security screenings, to comply with minimum wage law, and to issue compliant wage statements. Plaintiffs would use at trial the same evidence and argument to prove Defendant's liability on a Class-wide basis. Thus, the typicality requirement is met.

### D. Plaintiffs and Class Counsel Are Adequate Representatives of the Class

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This requirement involves two issues: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Pinkston v. Wheatland Enters.*, No. 11-CV-2498-JAR, 2013 U.S. Dist. LEXIS 43247, at *15 (D. Kan. Mar. 27, 2013). Both requirements are met here. Plaintiffs' interests align with those of the Class, and no conflict exists between Plaintiffs' interests and the Class Members'. *See supra* at III(F). Plaintiffs are familiar with the claims asserted in this action, have participated in discovery and settlement negotiations, and have communicated with Plaintiffs' Counsel throughout the litigation. Cottrell Decl., ¶ 55. Plaintiffs seek to recover damages from Defendant's alleged unlawful conduct on their own behalf and on behalf of all Class Members. Thus, Plaintiffs are adequate representatives of the Class under Rule 23(a)(4). Likewise, as discussed further below, Plaintiffs' Counsel are experienced in class actions and well-qualified to represent the Class.

### E. Common Issues Predominate

Rule 23(b)(3)'s predominance requirement asks whether the "proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). "[T]o satisfy the commonality requirement of Rule 23(a)(2), the class's claims 'must depend upon a common contention' that 'must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue

that is central to the validity of each one of the claims in one stroke.'" *Brayman v. KeyPoint Gov't Sols., Inc.*, 83 F.4th 823, 837 (10th Cir. 2023) (quoting *Wal-Mart Stores*, 564 U.S. at 350). The "focus" is "on the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation. ... The existence of a single common question is sufficient to meet the commonality requirement." *Id.* (internal quotation omitted). The essential inquiry is whether "common answers" on liability can be determined by a "classwide proceeding." *Id.* Where plaintiffs are unified by common legal theories and facts, predominance is satisfied. *Knight v. Mill-Tel, Inc.*, No. 11-1143-EFM, 2013 U.S. Dist. LEXIS 105622, at *24 (D. Kan. July 29, 2013). This is so even where there are some individualized damage issues. *See, e.g., Black v. Occidental Petroleum Corp.*, No. 22-8040, 69 F.4th 1161, 1190 (10th. Cir. 2023).

Here, Class Members' common factual allegations and legal theories—i.e., that Defendant violated Colorado law by failing to properly pay Class Members and provide them with compliant wage records—predominate over any individual variations among Class Members. *See supra* at I(B) (pleadings), IIV(B) (common questions of law and fact). The predominance requirement is therefore satisfied.

### F.  The Class Action Is Superior to Other Methods of Adjudication

The second part of the Rule 23(b)(3) analysis asks whether the class mechanism superior to other methods available for a fair and efficient adjudication of the controversy. *Amchem*, 521 U.S. at 617. Rule 23(b)(3) provides a non-exclusive list of factors relevant to the Court's assessment of the superiority of a class action, including the class members' interests in individually controlling the prosecution of separate actions, the extent of any litigation already begun by class members, and the desirability of concentrating the litigation of the claims in the particular forum. Fed. R. Civ. P. 23(b)(3)(A)–(C).

This factor weighs in favor of class treatment because it is not in the Class Members' interests to conduct separate actions. Among other things, the amounts involved in this case are

relatively small, such that it would be impractical and unrealistic to expect individual Class Members each to hire independent private counsel to pursue their claims. *See Amchem*, 521 U.S. at 617 (noting financial disincentives for class members to bring individual actions). Likewise, Plaintiffs' Counsel is aware of no other litigation concerning the controversy begun by any Class Members. *See* Cottrell Decl., ¶ 55. Concentrating the litigation in this Court is desirable because this is where Defendant's allegedly wrongful conduct occurred and where Plaintiffs live and worked. Furthermore, the class device will achieve economies of scale, conserve judicial resources, preserve public confidence in the judicial system by avoiding wasteful, repetitive proceedings, and prevent potentially inconsistent adjudications of similar claims. *See Whitton v. Deffenbaugh Indus., Inc.*, No. 2:12-cv-02247-CM-KGG, 2016 U.S. Dist. LEXIS 115103, at *18 (D. Kan. Aug. 26, 2016).

For these reasons, a class action is the fairest and most efficient mechanism to resolve the Class Members' claims. Accordingly, the Court should certify the Class for purposes of settlement.

## VI. THE COURT SHOULD FINALLY APPROVE CLASS COUNSEL, AND APPROVE CLASS COUNSEL'S FEES AND COSTS

### A. The Court Should Finally Approve Class Counsel

Rule 23(c)(1)(B) provides that "[a]n order that certifies a class action must … appoint class counsel under Rule 23(g)." Fed. R. Civ. P. 23(c)(1)(B). The Rule provides four factors that courts must consider in appointing class counsel, in addition to any other pertinent matter: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A)-(B); *see also Chappell v. Corp. of the President of the Church of Jesus Christ of Latter-Day Saints*, 2024 U.S. Dist. LEXIS 4118 (D. Utah Jan. 8, 2024; Case No. 2:23-cv-794-TS-DBP) (quoting and applying Rule 23(g) factors).

Plaintiffs also request that the Court grant final approval of Don J. Foty, of Hodges & Foty, L.L.P.; Hans Nilges, of Nilges Draher LLC; Anthony Lazzaro, of the Lazzaro Law Firm, LLC; and Carolyn H. Cottrell, of the law firm Schneider Wallace Cottrell Konecky LLP, as Class Counsel in this matter. Class Counsel meets all the criteria set out above. Counsel has performed substantial work identifying, investigating, prosecuting, and settling Plaintiff's and the Class Members' claims. *See* Cottrell Decl., ¶¶ 8-33. As set forth in greater detail in Cottrell's declaration, Class Counsel has substantial experience prosecuting and settling employment class actions, including wage-and-hour class actions, and the attorneys assigned to this matter are well-versed in the law applicable to such cases and are well-qualified to represent the Class. *Id.* at ¶¶ 35-37. (*See also, generally,* Nilges Decl.) Accordingly, courts in this district and nationwide have consistently found SWCK to be adequate class counsel in wage-and-hour class actions. *See, e.g., Hanifin v. Accurate Inventory & Calculating Serv*., No. 11 Civ. 1510 (MAD) (ATB), 2014 U.S. Dist. LEXIS 115710, at *6 (N.D.N.Y. Aug. 20, 2014) ("SWCK is well-qualified to represent Plaintiffs' interests in this action due to their extensive experience with class actions.") (internal quotation marks omitted); *Villafan v. Broadspectrum Downstream Servs*., No. 18-cv-06741-LB, 2021 U.S. Dist. LEXIS 249763, at *17 (N.D. Cal. Apr. 8, 2021) (noting that SWCK has "the requisite qualifications, experience, and expertise in prosecuting class actions"); Cottrell Decl., ¶ 36.

Based on Class Counsel's experience prosecuting class actions and the record in this case, the Court should find Class Counsel will adequately represent the Class's interests.

### B. Standards for Approval of Class Counsel's Fees and Costs

In the class context, courts in the Tenth Circuit commonly "examine the reasonableness of a fee request through a percentage of recovery analysis" to assess whether it is "fair, adequate, and reasonable." *Kennedy v. Mountainside Pizza, Inc.*, 2021 WL 5882138, 2021 U.S. Dist. LEXIS 237414, *17 (D. Colo. 2021). Likewise, the FLSA entitles prevailing plaintiffs to recover "a reasonable attorney's fee . . . and costs of the action," 29 U.S.C. § 216(b). Either way, the fee must

be reasonable. In such cases, "courts in this circuit may calculate a reasonable attorney's fee using either the percentage of the fund method or the lodestar method." *Faulkner v. Ensign United States Drilling Inc.*, 2020 WL 550592, 2020 U.S. Dist. LEXIS 17555, at *8 (D. Colo. 2020), *citing Gottlieb v. Barry*, 43 F.3d 474, 483 (10th Cir. 1994); *see also Geiger, supra,* 2017 U.S. Dist. LEXIS 232669 at *19-20 (the Tenth Circuit recognizes lodestar fees as "presumptively reasonable").

Under either method, courts must consider the following factors, to the extent they are relevant: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by [the] client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Whittington v. Taco Bell of Am., Inc*., 2013 WL 6022972, 2013 U.S. Dist. LEXIS 161665, at *5 (D. Colo. 2013); *see also Johnson v. Ga. Highway Express, Inc*., 488 F.2d 714, 717-19 (5th Cir. 1974); *Gottlieb*, 43 F.3d at 483 (explaining that courts must consider the *Johnson* factors regardless of which method is used to calculate attorneys' fees).

### C.  Class Counsel's Fees and Costs Should Be Approved

The relevant *Johnson* factors, discussed below, all support approval of the requested fees and costs. First, courts have described "the degree of success obtained" as "the most critical factor in determining the reasonableness of a fee award." *Farrar v. Hobby*, 506 U.S. 103, 114 (1992) (internal quotation marks omitted). Here, the recovery for Plaintiffs and Class Members is approximately 105% of unpaid overtime based on 41.9 minutes per week of security checks and 10 minutes per week of COVID screening time. Nilges Decl. at ¶ 12. This Settlement is a

substantial achievement and an unqualified victory for the Class Members.[14] Plaintiff's Counsel achieved this result despite serious questions regarding the claims, defenses, and proof at issue in this case, affecting both certification, decertification, and whether Plaintiffs could prevail on the merits of their claims regarding off-the-clock work, related issues, and derivative penalties. *Id.* Given the risk involved in proceeding through certification, trial, and potential post-judgment motions and/or appeals, the recovery achieved by the Settlement is an excellent result for the Collective members. Ultimately, because of Plaintiffs' efforts and the skillful prosecution of the claims by Class Counsel, Settlement Class Members are receiving significant payment. *Id.* at ¶¶ 50-51. This "most critical factor" therefore supports approval.

Plaintiffs' Counsel have naturally spent substantial time and resources on this case, which is almost three years old. Before Rios and Rivera filed their Complaints, counsel investigated the facts and communicated with their respective clients regarding the pleadings. Cottrell Decl., ¶ 8. Through informal discovery, counsel spent significant time analyzing the sampled data and documents produced by Defendant. Cottrell Decl., ¶¶ 17-19. Plaintiffs' Counsel also spent significant time preparing other documents in this case, as well as meeting and conferring with defense counsel. *Id.* at ¶¶ 8-18. Finally, counsel spent substantial time on the mediation and settlement, including preparation, the mediation session, preparing the settlement agreement, and related communications. *Id.* at ¶¶ 17-19; *see also* ¶¶ 20-22, 23, 25, 27-28. Given the substantial amount of time and labor invested by Plaintiff's Counsel[15] in this case, this factor favors approval.

Next, this case involved several key issues, including but not limited to whether Defendant required Plaintiffs and Class Members to work before and after shifts without compensation; whether Defendant required Plaintiffs and Class Members to work during purported meal periods;

---

[14] *See Voulgaris v. Array Biopharma, Inc*., 60 F.4th 1259, 1264 (10th Cir. 2023) (median settlement as percentage of overall damages was 7.6% for certain Tenth Circuit class cases between 2010 and 2019).

[15] As of February 9, 2024, SWCK alone had spent at least approximately 136.4 hours on this case. Cottrell Decl., ¶ 43.

the impact of changes in state law (COMPS) during the relevant period; the merits of Defendant's alleged defenses; and most importantly, whether these questions could be resolved on a class- and/or collective-wide basis. Defendant asserted affirmative and other defenses that required substantial analysis and argument. Effective prosecution of the underlying claims required not only extensive knowledge of the applicable law, but also insight on successfully litigating cases under the FLSA and Rule 23. In evaluating the risks of proceeding to trial and in negotiating the Settlement, counsel also had to navigate difficult issues related to Colorado state law, the FLSA, and arguments that may arise on certification/decertification motions. Cottrell Decl., ¶¶ 48-49. Accordingly, this factor weighs in favor of approval. *See In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*, 625 F. Supp. 2d 1143, 1150 (D. Colo. 2009) (noting that, although the area of law was not novel, the difficulty and complexity of the issues in the case supported a "generous award of attorney fees").

Plaintiffs' Counsel are likewise are well-equipped to address the unique challenges of litigation of this nature. *See* Cottrell Decl., ¶¶ 35-37. Plaintiff's Counsel successfully negotiated a settlement that provides meaningful recovery to Plaintiff and the Collective members, showing that counsel's skill and experience weigh in favor of approving their fees. Likewise, this case precluded counsel from taking other work during its pendency. "Attorneys attempting to handle a large class such as this are precluded by the ticking of the clock from taking certain other cases given that they have decided to take a chance on a possible recovery in a contingent fee case." *Whittington*, 2013 U.S. Dist. LEXIS 161665, at *22; *see also Faulkner*, 2020 U.S. Dist. LEXIS 17555 at *12 (quoting *Whittington* in FLSA context). Here, Plaintiff's Counsel spent well over 130 hours on this case on a contingent-fee basis. As such, "the handling of this case precluded other work, and therefore the fourth factor weighs in favor of the requested fee award." *Id.*

The requested fees must also be reasonable considering customary fees and awards in similar cases. When performing lodestar crosschecks or evaluating attorneys' fee awards under the

lodestar method, courts have approved fee awards constituting up to **four times** the billed amount. *See Mishkin v. Zynex, Inc.*, Nos. 09-cv-00780-REB-KLM, 09-cv-00816-REB-KLM, 09-cv-00829-REB-KLM, 2012 U.S. Dist. LEXIS 132405, at *8–9 (D. Colo. Sept. 14, 2012) (collecting cases approving awards ranging from 2.5-4.6x respective lodestar amounts); *Gray v. Delta County Memorial Hospital District* (D. Colo, Case No. 2019-cv-02938), ECF Nos. 141, 142 (approving FLSA settlement with similar fee award to SWCK). Here, the requested award represents *less than half* of Plaintiff's Counsel's billed lodestar amount of $91,690.50 based on approximately 136.4 hours of billable work (as of February 9). Cottrell Decl., ¶ 44. All billed work and expenses were necessary and productive. Moreover, the requested fee award is less than one-third of the settlement fund (*id.* at ¶ 50), and represents a much smaller proportion of counsel's actual time billed than courts routinely approve. This request allows for an ample recovery for the Plaintiffs and Class Members, who will receive significant amounts in view of the claims released. Accordingly, this factor favors approval.

Moreover, the contingent nature of Plaintiffs' Counsel's fee further favors approval. In this case, counsel had no guarantee of compensation or reimbursement, but undertook all the risks of litigation on a completely contingent fee basis. Cottrell Decl., ¶ 41. The inherent risks of proving liability and damages on a Class-wide basis, and Defendant's representation by skillful counsel, confront Class Counsel with the prospect of recovering nothing or close to nothing for their commitment to and investment in the case. *Id.* Nevertheless, Class Counsel committed themselves to developing and pressing the Class Members' claims to enforce their rights and maximize the Class's recovery. *Id.* at ¶ 42.[16] Further, comparing the Settlement fee award with Class Counsel's hourly rates and the number of hours worked on this case, Class Counsel's effective rates are significantly lower than lodestar. Finally,

---

[16] *See* Posner, Economic Analysis of Law, 534, 567 (4th ed. 1992) (observing contingent fees "must be higher than a fee for the same legal services paid as they are performed … because the risk of ... loss of the case, which cancels the debt of the client to the lawyer[,] is much higher.").

Moreover, the high risk of this case also makes it undesirable, which further supports the requested fees. *Rothe v. Battelle Mem. Inst.*, No. 1:18-cv-03179-RBJ, 2021 U.S. Dist. LEXIS 117836, at *32 (D. Colo. June 24, 2021). Plaintiff's Counsel's "time spent, and out-of-pocket costs w[ere] not an insubstantial burden, given the significant risk that plaintiffs would be unable to obtain any recovery." *Id.* at *33. These risks and burdens were also "not ... insubstantial" given the factual and legal questions discussed above. This further "weighs in favor of the requested fee award." *Id.*

In view of the relevant facts, including the factors outlined above,[17] Plaintiffs' counsel's requested award for fees and costs is reasonable compensation for the excellent recovery achieved. The billed costs were reasonable, necessary to the prosecution, and of the type customarily billed to fee-paying clients. *Id.* at ¶ 45. The Court should therefore approve the award.

## VII. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant this unopposed motion for final approval of the Settlement, and enter an order consistent with the [Proposed] Order filed herewith.

Dated: February 22, 2024          Respectfully submitted,

                                  */s/ Carolyn H. Cottrell*
                                  Carolyn H. Cottrell
                                  California Bar No.: 166977
                                  SCHNEIDER WALLACE COTTRELL
                                  KONECKY LLP
                                  2000 Powell St, Suite 1400
                                  Emeryville, CA 94608
                                  Telephone: (415) 421-7100
                                  Facsimile: (415) 421-7105
                                  Email: ccottrell@schneiderwallace.com
                                  Hans A. Nilges
                                  Ohio Bar No. 076017

---

[17] There is "no indication that . . . counsel adjusted the agreed fee in this case based on any special relationship with the lead plaintiffs," (*In re Qwest*, 625 F. Supp. 2d at 1153), and the only agreement between the parties is the settlement. Accordingly, these factors do not apply to this case.

NILGES DRAHER LLC
7266 Portage Street, N.W. Suite D
Massillon, OH 44646
Tel: (330) 470-4428
Fax: (330) 754-1430
Email: hans@ohlaborlaw.com

Don J. Foty
Texas State Bar No. 24050022
HODGES & FOTY, L.L.P.
4409 Montrose Blvd, Ste. 200
Houston, TX 77006
Tel: (713) 523-0001
Fax: (713) 523-1116
Email: dfoty@hftrialfirm.com
Anthony J. Lazzaro
Ohio Bar No. 0077962
Matthew S. Grimsley
Ohio Bar No. 0092942
THE LAZZARO LAW FIRM, LLC
34555 Chagrin Boulevard, Suite 250
Moreland Hills, Ohio 44022
Tel: 216.696.5000
Fax: 216.696.7005
Email: anthony@lazzarolaw.com
Email: matthew@lazzarolawfirm.com

*Attorneys for Plaintiffs and Class Members*

**CERTIFICATE OF SERVICE**

I hereby certify that on February 22, 2024, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access the filing through the Court's system.

_/s/ Carolyn H. Cottrell_
*One of Class Counsel*

**CERTIFICATE OF CONFERRAL**

Pursuant to D.C.COLO.LCivR 7.1(a), prior to filing the forgoing Motion, Plaintiffs' Counsel emailed it to Defendant's Counsel, who responded via email confirming that Defendant does not oppose it.

/s/ *Carolyn H. Cottrell*
Carolyn H. Cottrell